UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

ALFRED VILTZ                           CIVIL ACTION NO. 6:10-CV-00231

VERSUS                                 JUDGE HAIK

MICHAEL ASTRUE,                        MAGISTRATE JUDGE HANNA
COMMISSIONER OF
SOCIAL SECURITY


## REPORT AND RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be REVERSED and REMANDED for reconsideration consistent with this report and recommendation.


### BACKGROUND AND THE COMMISSIONER'S FINDINGS

Alfred Viltz was born October 2, 1961.[1]  He will soon reach his fiftieth birthday.  Mr. Viltz has twice injured his back in on-the-job accidents.  The first accident was in the 1980s and led to his undergoing low back surgery in approximately 1987.[2]  On March 29, 2003, Mr. Viltz again allegedly injured his low

---

[1]        Rec. Doc. 9-3 at 26.

[2]        Rec. Doc. 9-3 at 28; Rec. Doc. 9-8 at 14, 25, 60, 67, 68.

back in a workplace accident.[3]  He treated with Dr. John Cobb and also with Dr. Clark

Gunderson.[4]  On June 2, 2004, Mr. Viltz was involved in a motor vehicle accident

that aggravated his low-back injury.[5]  The second surgery had already been

scheduled, and it proceeded on June 14, 2004.[6]  The surgery, which was performed

by Dr. Gunderson at Lake Charles Memorial Hospital, consisted of a lumbar

laminectomy at L3-4 and L4-5 and a lateral fusion at L3-4 and L4-5 with pedicle

screws.[7]

Following the surgery, Mr. Viltz applied for and was awarded a period of

disability from March 29, 2003 to June 1, 2006.[8]  On January 30, 2007, Mr. Viltz

again applied for Social Security disability benefits, alleging that he has been unable

to work since he was injured on the job on March 29, 2003.[9]  In a contemporaneous

disability report,[10] Mr. Viltz explained that his lower back injury limits his ability to

---

[3]      Rec. Doc. 9-8 at 25.

[4]      Rec. Doc. 9-8 at 1-41.

[5]      Rec. Doc. 9-8 at 28.

[6]      Rec. Doc. 9-8 at 28-32.

[7]      Rec. Doc. 9-8 at 13.

[8]      Rec. Doc. 9-4 at 8-18.

[9]      Rec. Doc. 9-6 at 4-7.

[10]      Rec. Doc. 9-7 at 2-14.

work because it makes him unable to sit, stand, or walk for long periods of time and limits how much he can lift.[11]

On June 5, 2007, his claim was denied.[12]  He applied for a hearing,[13] and a hearing was held before Administrative Law Judge ("ALJ") Ronald L. Burton on January 15, 2009.[14]  No vocational expert testified at the hearing.

On March 31, 2009, the ALJ issued his ruling, finding that Mr. Viltz was not under a disability from March 29, 2003 through the date of the decision.[15]  Because he had previously been awarded a period of disability from March 29, 2003 through June 1, 2006, Mr. Viltz appealed the ALJ's decision to the Appeals Council.  The Appeals Council granted his request for review.[16]  On December 18, 2009, the Appeals Council modified the ALJ's ruling, finding that Mr. Viltz was not disabled from June 2, 2006 through the date of the ALJ's decision of March 31, 2009.[17]

--------

[11]    Rec. Doc. 9-7 at 7.

[12]    Rec. Doc. 9-4 at 2; Rec. Doc. 9-5 at 2.

[13]    Rec. Doc. 9-3 at 8.

[14]    The transcript of the hearing is found in the record at Rec. Doc. 9-3 at 23-38.

[15]    Rec. Doc. 9-3 at 22.

[16]    Rec. Doc. 9-5 at 30.

[17]    Rec. Doc. 9-3 at 6.

Mr. Viltz now seeks judicial review of both the ALJ's decision and the Appeals Council's decision, arguing that he has been disabled since June 2, 2006 because of chronic low back pain.

## ASSIGNMENT OF ERRORS

The claimant contends that the Commissioner erred (1) in finding that, despite his chronic pain, Mr. Viltz has the residual functional capacity to perform all sedentary work; (2) in relying exclusively upon the Medical-Vocational Guidelines to find Mr. Viltz not disabled; and (3) in failing to fully develop the facts regarding Mr. Viltz's low average intellectual functioning.

## THE STANDARD OF REVIEW

This Court's review of the Commissioner's decision that the claimant is not disabled is limited to determining (a) whether the decision was supported by substantial evidence and (b) whether the proper legal standards were applied in reaching that decision.[18]  If the Commissioner's findings are supported by substantial

---

[18]    *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001).

evidence, they must be affirmed.[19]  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance.[20]   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[21]   Finding substantial evidence does not involve a search of the record for isolated bits of evidence that support the Commissioner's decision; instead, the entire record must be scrutinized as a whole.[22]   In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[23]

## DISCUSSION

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[24]   Disability is defined in the Social Security regulations as the

---

[19]     *Patterson v. Astrue*, 324 Fed. App'x 419, 421 (5th Cir. 2009); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[20]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[21]     *Boyd v. Apfel,* 239 F.3d at 704.

[22]     *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[23]     *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[24]     *Alfred v. Barnhart*, 181 Fed. App'x at 450; *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[25]   Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[26]

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1.      An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.      An individual who does not have a "severe impairment" will not be found to be disabled.

3.      An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.      If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

---

[25]      42 U.S.C. § 423(d)(1)(A).

[26]      20 C.F.R. § 404.1572(a)-(b).

5.   If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed.[27]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[28] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[29]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[30]

The claimant bears the burden of proof on the first four steps.[31]  At the fifth step, the Commissioner bears the burden of showing that the claimant can perform

---

[27]     *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[28]     20 C.F.R. § 404.1520(a)(4).

[29]     20 C.F.R. § 404.1545(a)(1).

[30]     20 C.F.R. § 404.1520(e).

[31]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

-7-

other substantial work in the national economy.[32]  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.[33]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[34]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[35]

In this case, the Commissioner found, at step one, that Mr. Viltz has not engaged in substantial gainful activity at any time relevant to this decision.[36]  This finding is supported by the evidence in the record.  Except for a brief attempt at carpentry, Mr. Viltz has not worked since the March 29, 2003 accident.[37]

At step two, the Commissioner found that Mr. Viltz has the following severe impairment:  low back pain, status-post two lumbar surgeries.  This finding is

---

[32]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[33]     *Fraga v. Bowen*, 810 F.2d at 1304.

[34]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[35]     *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[36]     Rec. Doc. 9-3 at 5, 17.

[37]     Rec. Doc. 9-3 at 29-30; Rec. Doc. 9-6 at 4, 10, 14; Rec. Doc. 9-7 at 7, 8, 25.

supported by the evidence in the record.  Mr. Viltz underwent back surgery in the 1980s;[38] Dr. Clark Gunderson performed a lumbar laminectomy at L3-4 and L4-5 and a lateral fusion at L3-4 and L4-5 with pedicle screws on June 14, 2004;[39] and Mr. Viltz continues to complain of low back pain.[40]

At step three, the Commissioner found that Mr. Viltz does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments.[41]  Before moving on to the fourth step, the Commissioner found that Mr. Viltz has the residual functional capacity to perform the full range of sedentary work.[42]  At step four, the Commissioner found that Mr. Viltz is unable to perform his past relevant work.[43]  At step five, the Commissioner found that there are jobs that exist in significant numbers in the national economy that Mr. Viltz can

---

[38]     Rec. Doc. 9-3 at 28; Rec. Doc. 9-8 at 14, 25, 60, 67, 68.

[39]     Rec. Doc. 9-8 at 13-22.

[40]     Rec. Doc. 9-3 at 31-35; Rec. Doc. 9-7 at 7, 19, 34, 37; Rec. Doc. 9-8 at 6, 14, 40, 60, 67, 68, 94; Rec. Doc. 9-9 at 8, 10, 16, 36.

[41]     Rec. Doc. 9-3 at 19; Rec. Doc. 9-3 at 5.

[42]     Rec. Doc. 9-3 at 19.

[43]     Rec. Doc. 9-3 at 5, 21.

perform.[44]  Based on these findings, the Commissioner concluded that Mr. Viltz is not disabled.[45]


A.   **IS THE COMMISSIONER'S RESIDUAL FUNCTIONAL CAPACITY FINDING SUPPORTED BY SUBSTANTIAL EVIDENCE?**

Mr. Viltz's first argument is that the Commissioner's residual functional capacity finding is not supported by substantial evidence, asserting that although his pain is not disabling it is a nonexertional factor that limits the range of sedentary work that he might otherwise perform.  The Commissioner found that Mr. Viltz has a medically determinable impairment that could reasonably be expected to cause the alleged symptoms, but he also found Mr. Viltz's testimony concerning the intensity, persistence, and limiting effects of his symptoms to be not credible because they are inconsistent with the Commissioner's finding that Mr. Viltz retains the residual functional capacity to perform all sedentary work.[46]

Subjective pain complaints need not be a separate ground for disability, but may significantly narrow the spectrum of jobs within a particular category for which

---

[44]     Rec. Doc. 9-3 at 6, 21.

[45]     Rec. Doc. 9-3 at 6, 22.

[46]     Rec. doc. 9-3 at 21.

-10-

the claimant would otherwise qualify.[47]  Consequently, the Commissioner erred in

finding Mr. Viltz's pain complaints incredible rather than evaluating those complaints

to determine if they had an impact on the spectrum of sedentary jobs that he is able

to perform.  It is, therefore, recommended that this matter be remanded for an

evaluation of the effect that Mr. Viltz's pain has upon his ability to perform the full

range of sedentary jobs.


**B.     DID THE COMMISSIONER ERR IN RELYING EXCLUSIVELY ON THE MEDICAL-VOCATIONAL GUIDELINES TO FIND MR. VILTZ DISABLED?**

Mr. Viltz's second argument is that the Commissioner erred in relying

exclusively upon the Medical-Vocational Guidelines to find Mr. Viltz disabled.  Once

a claimant satisfies his burden under the first four steps of the required analysis, the

burden shifts to the Commissioner to show that there is other gainful employment

available in the national economy that the claimant is capable of performing.[48]  The

Commissioner may meet that burden by reference to the Medical-Vocational

Guidelines of the regulations,[49] by expert vocational testimony, or by other similar

---

[47]     *James v. Bowen*, 793 F.2d 702, 705-06 (5th Cir. 1986), citing *Dellolio v. Heckler*, 705 F.2d 123, 127 (5th Cir. 1983).

[48]     *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

[49]     The Guidelines, also known as the "Grids," are found at 20 C.F.R. § 404, Sub-part P, Appendix 2.

evidence.[50]  The Commissioner may rely exclusively on the Guidelines only if (1) the claimant suffers only from exertional impairments or (2) the claimant's nonexertional impairments do not significantly affect his residual functional capacity.[51]  Thus, the Guidelines may be used exclusively "only if the guidelines' evidentiary underpinnings coincide exactly with the evidence of disability appearing in the record."[52]  If nonexertional impairments significantly affect the claimant's residual functional capacity, the Commissioner may not rely upon the Guidelines exclusively; instead, he is permitted to look to the Guidelines for guidance but must also utilize expert vocational testimony or other similar evidence to meet his burden of proving that there are a significant number of jobs in the national economy that the claimant can perform.[53]

If the claimant has nonexertional limitations, the Commissioner should make an individualized determination of the claimant's ability to perform specific jobs in the national economy.[54]  When an ALJ determines that a claimant suffers from a

---

[50]    *Fraga v. Bowen*, 810 F.2d at 1304.

[51]    20 C.F.R. § 404.1569; *Fraga v. Bowen*, 810 F.2d at 1304.

[52]    *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Scott v. Shalala*, 30 F.3d 33, 34-35 (5th Cir. 1994); *Lawler v. Heckler*, 761 F.2d 195, 197 (5th Cir. 1985).

[53]    *Fraga v. Bowen*, 810 F.2d at 1304.  See, also, *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Lawler v. Heckler*, 761 F.2d at 198; *Dellolio v. Heckler*, 705 F.2d at 127-28.

[54]    *Carry v. Heckler*, 750 F.2d 479, 483, n. 9 (5th Cir. 1985).

nonexertional impairment that prevents performance of the claimant's past work, the Commissioner generally must produce expert vocational testimony or other similar evidence to establish that jobs exist in the national economy that the applicant can perform.[55]  In this case, however, the ALJ relied solely upon the Guidelines, and no vocational expert testified at the hearing.

The Commissioner found that Mr. Viltz retains the residual functional capacity to perform all sedentary work.  Sedentary work, as defined in the Social Security regulations, involves lifting no more than ten pounds at a time, occasionally lifting or carrying articles like docket files, ledgers, and small tools, sitting for about six hours out of an eight-hour workday, and occasionally walking or standing.[56]  In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday, with a morning break, a lunch period, and an afternoon break at approximate two-hour intervals.[57]

---

[55]      *Lawler v. Heckler*, 761 F.2d at 198; *Dellolio v. Heckler*, 705 F.2d at 127-28.

[56]      20 C.F.R. § 404.1567(a); *Ripley v. Chater*, 67 F.3d 552, 557, n. 25 (5th Cir. 1995); *Lawler v. Heckler*, 761 F.2d at 198.

[57]      *Guzman v. Barnhart*, 159 Fed. App'x 578, 581 (5th Cir. 2005).

-13-

"If an individual is unable to sit for a total of six hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded."[58]

In this case, Mr. Viltz's primary complaint is back pain.  Pain can impose both exertional and nonexertional limitations on an individual's ability to engage in substantial gainful activity.[59]  Nonexertional limitations include difficulty functioning due to pain.[60]  Back pain causes a nonexertional limitation when it requires an individual to alternate periods of sitting and standing because such a requirement limits an individual's ability to perform a full range of sedentary work.[61]  When pain imposes a nonexertional limitation, the ALJ must utilize expert vocational testimony to establish that jobs exist.[62]  More specifically, the Fifth Circuit has determined that when a claimant is required to alternate sitting and standing throughout the work day, vocational expert testimony is required.[63]  Having to alternate between sitting and standing in order to work the entire day does not fit within the definition of sedentary

---

[58]    *Guzman v. Barnhart*, 159 Fed. App'x at 581, quoting Social Security Ruling 96-9p, 1996 WL 374185, at *6 (July 2, 1996).

[59]    *Dellolio v. Heckler*, 705 F.2d at 127.  See, also, *Scott v. Shalala*, 30 F.3d at 35.

[60]    See 20 C.F.R. § 404.1569a(c)(1).

[61]    *Scott v. Shalala*, 30 F.3d at 35.

[62]    *Scott v. Shalala*, 30 F.3d at 35, citing *Fraga v. Bowen*, 810 F.2d at 1304.

[63]    *Scott v. Shalala*, 30 F.3d at 33-35.

-14-

work.[64]   Furthermore, the regulations require that a residual functional capacity "assessment must be specific as to the frequency of the individuals need to alternate sitting and standing."[65]

In this case, neither the ALJ nor the Appeals Council addressed whether Mr. Viltz's back pain requires him to alternate between sitting and standing throughout the day.  However, both Mr. Viltz's treating physician and the consulting physician imposed sit/stand restrictions in their evaluations of Mr. Viltz's back pain.

On February 1, 2005, Dr. Clark Gunderson, Mr. Viltz's treating physician, wrote a letter in which he stated that Mr. Viltz was subject to certain restrictions.  He said:  "I believe this patient should limit his lifting activity to 15 pounds, after he has reached maximum medical improvement which will probably be ten to twelve months from the date of surgery.  It is hoped that he can lift 30 pounds with no continual bending and stooping, and to alternate sitting and standing."[66]  Thus, Dr. Gunderson very clearly stated that Mr. Viltz should alternate sitting and standing.

---

[64]      *Ripley v. Chater*, 67 F.3d at 557, n. 25, citing *Scott v. Shalala*, 30 F.3d at 34.

[65]      *Sneed v. Astrue*, No. 1:08-cv-00942, 2009 WL 3448854, at *5 (W.D. La. Oct. 26, 2009).

[66]      Rec. Doc. 9-8 at 34.

It is well-settled that the opinions of a claimant's treating physician are entitled to great weight.[67]  Still, an ALJ is free to reject a treating physician's opinion when it is conclusory and not adequately supported by the evidence in the record.[68]  In this case, however, Dr. Gunderson's medical opinion regarding Mr. Viltz's need to alternate sitting and standing does not contradict other evidence in the record.  To the contrary, Dr. Stephen C. Ayers, the consulting physician, concurred with Dr. Gunderson's opinion.

Dr. Ayers evaluated Mr. Viltz on April 10, 2007.  Included in his report is a "Medical Assessment of Ability to do Work-Related Activities (Physical)."[69]  Although Dr. Ayers stated that he believes Mr. Viltz is capable of sitting for six hours in an eight-hour day, he also stated that he believes Mr. Viltz can only sit for thirty minutes without interruption.  Similarly, he believes that Mr. Viltz is capable of walking for five hours of an eight-hour work day, but for only thirty minutes without interruption.  Thus, Dr. Ayers agreed with Dr. Gunderson that Mr. Viltz should alternate sitting and standing at approximately thirty-minute intervals.  This is inconsistent with the Commissioner's finding that Mr. Viltz has the residual

---

[67]     *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995).

[68]     *Leggett v. Chater*, 67 F.3d at 566.

[69]     Rec. Doc. 9-8 at 65-66.

-16-

functional capacity to perform all sedentary jobs.  In reaching that finding, the ALJ

and the Appeals Council failed to consider the treating physician's and the

consultative expert's recommendations that Mr. Viltz alternate between standing and

sitting.  Neither the ALJ nor the Appeals Council addressed this restriction in their

rulings.

In his ruling, the ALJ discussed the opinions of Dr. Stephen Wilson, who

allegedly conducted a consultative orthopedic examination on May 31, 2006.[70]  Dr.

Wilson's report is not included in the record.  Because the reviewing court's role is

limited to determining whether the Commissioner's decision is supported by

substantial evidence in the record and whether the proper legal standards were

applied,[71] Dr. Wilson's opinions were not considered by the undersigned.

While it is true that allegations of nonexertional limitations do not preclude

application of the Grids if the ALJ determines that the limitations do not significantly

limit the range of work permitted by exertional limitations,[72] no such finding was

made in this case.  Rather than evaluating the effect that Mr. Viltz's pain might have

on his ability to perform sedentary work, the ALJ found Mr. Viltz's pain complaints

---

[70]        Rec. Doc. 9-3 at 3-4.

[71]        See, e.g., *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).

[72]        *Newton v. Apfel*, 209 F.3d at 458, citing *Fraga v. Bowen*, 810 F.2d at 1304.

not credible to the extent that they are inconsistent with his finding that Mr. Viltz can perform a full range of sedentary work.

The undersigned finds that the record in this matter demonstrates that the Commissioner erred in finding that Mr. Viltz has the residual functional capacity to perform all sedentary jobs. Because he must alternate walking or standing and sitting, there are sedentary jobs that he cannot perform. Furthermore, the ALJ and the Appeals Council erred in failing to find that the Mr. Viltz has limitations that preclude exclusive reliance on the guidelines. The ALJ also erred in relying solely upon the Guidelines and failing to obtain testimony from a vocational expert.

A reviewing court must affirm the Commissioner's determination of disability when substantial evidence of record supports the determination, but the court must not affirm a decision reached by failing to follow established legal standards.[73] When an ALJ improperly relies on the Guidelines, he has failed to follow established legal standards. Under sentence four of 42 U.S.C. § 405(g), the Commissioner's decision may be reversed and the case may be remanded for further administrative action when the court finds that improper legal standards were applied.[74] Accordingly, the

---

[73]     *Hughes v. Shalala*, 23 F.3d 957, 959 (5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990); *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir. 1989).

[74]     See *Moncrief v. Gardner*, 357 F.2d 651, 653 (5th Cir. 1966).

-18-

undersigned recommends that this matter be reversed and remanded for supplementation of the record with vocational expert testimony and a reevaluation of Mr. Viltz's residual functional capacity.

## C.   DID THE COMMISSIONER ERR IN FAILING TO FULLY DEVELOP THE FACTS REGARDING MR. VILTZ'S INTELLECTUAL FUNCTIONING?

An ALJ has a duty to fully and fairly develop the facts relative to a claim for disability benefits.[75]  If the ALJ does not satisfy this duty, he does not have before him sufficient facts on which to make an informed decision, and consequently, his decision is not supported by substantial evidence.[76]  Reversal is appropriate, however, only if the claimant demonstrates that he was prejudiced by the ALJ's failure to develop the facts or the record.[77]  Prejudice can be established by showing that, if the ALJ had adequately performed his duty, he could and would have adduced evidence that might have altered the result.[78]  Still, the claimant bears the burden of proving his

---

[75]     *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d at 557.

[76]     *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989), citing *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984).

[77]     *Ripley v. Chater*, 67 F.3d at 557.

[78]     *Kane v. Heckler*, 731 F.2d at 1220.

disability[79] as well as the burden of obtaining medical records.[80]  If the claimant fails to provide sufficient medical evidence, the ALJ may make a decision based on the evidence that is available.

Furthermore, "[t]he ALJ's duty to investigate... does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record."[81]  Consequently, when a claimant fails to raise the issue of a particular cause for disability before seeking review in the district court, he cannot say that he put the issue before the ALJ or that the ALJ improperly disregarded it.[82]  That is the case here.

In his application for disability benefits, Mr. Viltz identified only back pain as the cause of his disability.  He has never contended that he is unable to work due to a lack of intellectual functioning.  Therefore, he cannot fault the ALJ for failing to find that this was a basis for concluding that he is disabled.

Additionally, a consultative evaluation is required only when the claimant presents evidence sufficient to raise a suspicion concerning a nonexertional

---

[79]    *Wren v. Sullivan*, 925 F.2d at 128.

[80]    *Gonzalez v. Barnhart*, 2002 WL 31319423, 1 (5th Cir. 2002), citing *Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981).

[81]    *Leggett v. Chater*, 67 F.3d at 566, citing *Pierre v. Sullivan*, 884 F.2d at 802.

[82]    *Gore v. Barnhart*, 54 Fed. App'x 406, 406 (5th Cir. 2002).

impairment, and the decision to order a consultative examination is within the ALJ's discretion.[83]

In this case, Mr. Viltz's depression diagnosis led the ALJ to investigate his mental state.  The ALJ ordered a consultative examination by a psychologist.  The psychologist, Dr. Eric P. Cerwonka, evaluated Mr. Viltz and rendered his opinions, including an opinion that Mr. Viltz exhibits low average intellectual functioning.[84] Mr. Viltz now suggests that the ALJ should have had certain specific tests performed by the psychologist.  But it was not up to the ALJ to instruct the psychologist on the type of testing to be performed.  An ALJ retains the services of a consulting physician but does not dictate what tests should be administered by the consulting physician.

Finally, Mr. Viltz's argument is based upon a psychological evaluation performed by Dr. Jerry L. Whiteman in March 2011, more than four years after Mr. Viltz applied for Social Security benefits and more than two years after the hearing was held in this matter.  Dr. Whiteman's report was not available to the ALJ or the Appeals Council when they made their decisions, and it is not a part of the administrative record of this matter.  When new evidence becomes available after the Commissioner has made a decision and there is a reasonable probability that the new

---

[83]     *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).

[84]     Rec. Doc. 9-8 at 69.

evidence would change the decision, it is appropriate for the reviewing court to remand the matter so that the new evidence may be considered.[85]  But remand is only justified if the claimant shows that he had good cause for failing to provide this evidence during the administrative proceedings.[86]

In this case, Mr. Viltz does not claim that he has a disabling psychological or intellectual impairment, he presented no evidence concerning such an impairment at the hearing, and he submitted no records from a treating psychologist for inclusion in the record.  Accordingly, the undersigned finds that Mr. Viltz has not shown good cause for failing to provide evidence relevant to such an impairment before this appeal, and the undersigned will not consider Dr. Whiteman's report.

In summary, the undersigned finds that the ALJ sufficiently developed the record with regard to Mr. Viltz's psychological state and intellectual functioning.

---

[85]     *Ripley v. Chater*, 67 F.3d at 555.

[86]     *Ripley v. Chater*, 67 F.3d at 555.

-22-

## CONCLUSION AND RECOMMENDATION

For the reasons given above,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be REVERSED and REMANDED for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  In particular, the undersigned recommends that this matter be reversed and remanded for an evaluation of the effect that Mr. Viltz's pain has upon his ability to perform the full range of sedentary jobs, for supplementation of the record with vocational expert testimony, and for evaluation of Mr. Viltz's residual functional capacity.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 18th day of August 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)